Welch, J.
Counsel have re-argued the case of Sebastian v. The Covington and Cincinnati Bridge Company, and ask us to review our opinion therein. We have done so, with all the care and attention deemed due to the subject, and are still disposed to adhere to the principles there laid down. In other words, we still hold, that the provision in the company’s charter, as to taxation, is in the nature of a contract; that the contract may be rescinded by the parties to it, the state and the company; that the ad valorem system of taxation provided by the constitution and laws of the state are to be regarded as an offer on the part of the state to rescind that contract; that the president of the ■company can not ex officio, of without special authority from the company, accept the offer so made ; and that until the offer is duly accepted, the company is to be taxed .according to the provision in its charter.
The facts of the present case, however, differ somewhat *323 from those of the one referred to, and questions are now made and argued which did' not arise, or were not considered in the former case. These questions, as -we understand counsel, are the following:
The record shows that the defendant in error ceased to be treasurer before the trial of the case in the common pleas; and the question -is made whether the proceeding did not thereby become abated or discontinued. We think not. The objection goes to the form of the proceeding, and not to its substance. It is in fact a proceeding at the suit of the state, or the public, represented by a public officer— the county treasurer—aud we suppose that the proceeding would not at all be vitiated, if in the mere entitling of the case the individual name of the treasurer were omitred. The treasurer for the time being is authorized to receive the money so to be recovered, and, admittedly, is authorized to carry on the proceeding, and we suppose his authority in neither case can be made to depend on the mere form of the proceeding or entitling of the case. It is a statutory proceeding to compel the payment of the tax into the treasury, and the treasurer for the time being acts merely as the agent of the state in instituting and carrying it on.
The question is also made, whether the court has any power to act in the case after the term next following the service of notice on the defendant. The statute provides that the “rule” for payment of‘the tax shall be entered at the first term, and this record shows that it was not entered until a subsequent term.
Clearly there is nothing in this objection. The statute is remedial, and should be so interpreted as to make it effective. The object was to insure a speedy collection of the taxes. The provision, that the rule shall be entered at the first term, was intended for the benefit of the treasurer, aud not of the tax-payer. The object of the provision was to denote the beginning of the court’s power, and not its termination—to give the court more power, and not less power *324 than it has in ordinary cases. The provision was not intended to be jurisdictional, but merely directory.
It appears from the record that originally the capital-stock of the company was only three hundred thousand, dollars, and that subsequently, and prior to the assessment of this tax, it was increased to over a million of dollars, in pursuance of an act of the Kentucky legislature, and of a. law of Ohio authorizing bridge companies to increase their capital stock. It also appears that most of this new stock was what is called “ preferred ” stock, being entitled to fifteen per cent, of dividends before anything should be divided or paid upon the common stock. The tax in question-was assessed upon one-half of the entire amount of the-company’s stock paid in, and it is claimed that by the true construction of the charter only one-half of the original three hundred thousand dollars of stock allowed by the-charter, and not the half of the entire amount, is subject to taxation. It .appeal’s also that the meeting of the stockholders, by which this new stock was agreed to he issued in pursuance of these acts of legislation, was held in Kentucky, and no meeting for that purpose was ever held in Ohio; and it is claimed that the stock was, therefore, issued without authority of Ohio law, and can not be the basis of taxation within, the meaning of the charter contract. In other words, it is claimed that the charter basis of taxation can not be enlarged by any increase of the capital stock of the company, and even if- it could, that no-valid increase of stock has ever been effected.
We can not agree to this construction of the contract. The charter provides that the basis of taxation shall be “ one-half of the capital stock of the company actually paid in.” It makes no discriminations as to the kind of stock, the date of its issuance, or the authority under which it is to be issued. Surely preferred stock, equally as common stock, and surely stock issued at one date, equally as that issued at another, come within both the letter and the spirit of this contract. The intention was to tax the company upon one-half of the capital on which it should acta *325 ■ally do business. The date and form of the stock are immaterial. It is only necessary that it should be issued by the company in pursuance of law, and its amount be actu.ally paid in to the company, in order to subject it, or rather the half of its amount, to taxation under the charter.
’ - Nor do we suppose that it makes any difference, so far .as taxation under this charter is concerned, whether the new stock was issued under authority of Kentucky law, or of Ohio law. It is sufficient, if it was issued under authority of either, to make it taxable under the contract. In such case, to say the least, it would be issued under color of law, and would, de facto, be stock of the company, and the company, as between it and the stockholders, would be estopped from denying its legality. W e are satisfied, however, that this corporation, having been chartered and •organized, under the laws of both states, might lawfully hold its meetings and transact its corporate business in ■either state; and that, therefore, the stock in question was issued under authority of Ohio law. To hold otherwise would be to make every corporate act of the company ineffectual, uuless repealed in both states. Every meeting of its stockholders or directors would have to be twice held, •and its business twice transacted, in order to make it valid and effectual. The truth is, that this is a single corporation, clothed with the powers of two corporations. It acts •under two charters, which in all respects are identical, ex-cept as to the source from which they emanate. What is authorized by one of these charters is authorized by both. What may lawfully be done under one may lawfully be done under both. Otherwise, a corporation with two ehar•ters has less power and privilege in many respects than a ■corporation with a single charter.
It is again insisted, as it was in the former case, that the bridge company has accepted the offer of the state to rescind the charter contract and become taxable under the general law. The question, as it stood in the former case, •■•is reargued at length, and two additional reasons, one of •which did not exist, and the other of which was not *326 urged, in the former case, are now assigned why the question should be decided in favor of the company.
One of these reasons is, that there is some additional evidence, as to the action of the company on the subject of rescission, and particularly as to tbe authorization of its president to make the alleged offer of rescission to the auditor. The other reason assigned is, that the company, by accepting and acting under thé law of Ohio authorizing an increase of its capital stock,' relinquished its .right to be taxed under the original ehax*ter, and subjected itself to taxation as other bridge companies, under the genex’al law;
As to the additional evidence, it need only be said that we do not think it materially varies the case. There is still no evidence of any resolve of the coxnpany to l’escind the contract, or of authority to the president to act for it in that behalf. And besides, I believe we are unanimous in the opinion that no such offer was made by the president. We understand it to be at most a conditional offer, and therefore not in a form to be accepted by the auditor. Had the company itself, by direct resolution, made this offer, it would, in our judgment, have been insufficient. It was merely an offer to be taxed on that part of the bi’idge north of low water mark. In other words, it was an offer to he-taxed under the general law, provided only that section of the bridge should be estimated or included. This we can not understand to be an unconditional acceptance of the offer made by the state, or an absolute relinquishment of the company’s right fo be taxed under the charter.
The proposition that the company, by accepting and acting upon the authority to increase its capital stock, relinquished its right to be taxed under the charter, the court deem it unnecessary in this case to determine. The claim is that the acceptance of any amendment of its charter by a eoi’poration incoi’porated under the old constitution, is in law and in fact a relinquishment of all its rights inconsistent with the present constitution and laws, and is equivalent to a surrender of its charter and the acceptance of a new one under the general laws.
*327 Suppose it to be conceded that tbe company, either by the increase of its stock, under the laws of Ohio, or by an authorized and unconditional offer made to the auditor, or otherwise, had entitled itself to be taxed under the general law, has the company shown sufficient cause why the tax in question should not be enforced against it? The tax stands, charged against the company on the duplicate, in the same-form in which taxes are assessed against other bridge companies; it stands there as a“tax” of$16,965.56”on“$536,884,”' the “ value of personal property ” of the company. Nothing is said on the duplicate as to the method by which this, sum of $536,884 was arrived at, whether by taking half the-stock, or by estimating the value of that part of the bridge actually or constructively in Ohio. The statute (S. & CL 1454) authorizes the proceeding against any person, corporation, etc., against whom a tax is “ assessed,” and which the treasurer is unable to collect.' A prima fade case is made by showing the assessment. Is it a good answer to this prima fade case merely to show that the tax assessed, or the valuation on which it is based, is arrived at by a wrong process, without showing that the sum is too large ? A right judgment rendered upon a wrong reason has always been held to be good. There is nothing in this record to show that $536,884 is an overvaluation of that part of the bridge belonging to Ohio, even should we take low-water mark to be the state line. The president of the company says that he offered to return the part of the bridge north of low-water mark “ at a valuation of $250,-000,” and that he thinks he offered to swear to it; but the record nowhere shows that he, of any one else, ever did swear to it, or what the real value of that part of bridge was. Should it be conceded, however, to be of that value, or oi any other value less than $536,884, the sum charged, ■it would still remain to be shown that this was the legal and proper basis for the valuation.
The State of Ohio, I believe, has always claimed to own to the center of the river. So far as any light is thrown upon that subject by the charter, the company and the state *328 "both seem to have proceeded upon the theory that half ■of the bridge belonged to the State of Ohio. And this theory, at least for purposes of taxation, seems to me to be ■quite a rational and just theory. The bridge is only to be valued as a bridge. Cut in two, its halves would be of no value as a bridge. Its bearings or foundations are ■equally in both states, and its builders derive their authority equally from both. As a thing of value it is indivisible. As a bridge, one part of it is as truly owned by •Ohio as another. The obvious and equitable method of taxation would seem to be the one adopted at its inception, namely, by dividing its value equally between the two states, irrespective of the exact-location of the state line. I know of no law or adjudication that stands in the way of such equal division of the bridge for purposes of taxation, and can see no just reason why it should not be adopted as the law of the case.
It is further claimed by the plaintiff in error that the ■court erred in allowing a penalty, and in allowing interest up to the time of granting the rule or judgment. So far as the interest is concerned we think this assignment of error must be sustained. In our opinion the penalty takes the place of interest, and .the latter is not to be charged, except from the date of the judgment.
If the amount of this interest is remitted the judgment will be affirmed, otherwise it will be reversed.

Interest remitted, and judgment affirmed.

White, J.
It is unnecessary to decide in this case whether the bridge company, by increasing its capital stock, became subject to,legislative control to the same extent as corporations created under the new constitution.
Assuming this to be so to the full extent claimed by.the learned counsel of the plaintiff in error, the question arises upon what property is the company liable to be assessed for taxation under the general tax law of 1859.
It is claimed that only so much of the bridge as lies *329 north, of low water mark on the north side of the' river is liable to be taxed in this state.
■ I can not assent to this vie'w. The claim is founded on the idea that low water mark on the north side of the river, •and not the middle of the stream, constitutes the boundary line between the States of Ohio and Kentucky.
'Whichever line may in fact be the true boundary between the states, Ohio claims jurisdiction to the middle of the river. This is apparent .from the charter of the bridge •company.
The bridge was designed as a thoroughfare between the states. The assent of both states was equally necessary to its construction; and it was constructed and qiaintained •equally under the authority of both. The structure as a bridge is a unit, and no part of it can be properly valued for taxation disconnected from the whole.
At the time of granting the charter of the plaintiff in error, the mode provided by the general law of the state for taxing bridge companies was upon the basis of their paid-up capital stock. In accordance with this policy, as the plaintiff' in error derived its authority as a coi’poration equally from Kentucky and Ohio, it was required to'be taxed in this state only on the half of its capital stock actually paid in.
The new constitution required taxes to be levied on property without regard to whether it was owned by individvals or corporations; and to carryout this constitutional requirement, the laws passed since the adoption of the constitution have substituted the property of corporations as the basis of taxation, instead of their capital stock.
It was not the intention of these laws to abridge the taxing power, or to exempt any of the corporations of the state from its exercise; but merely to change the basis or subjects upon which they were to be assessed ?
Assuming, therefore, that the bridge company has become subject to be taxed on the property basis, as prescribed by the constitution and the tax law of 1859, on what part -of its bridge is it liable to be taxed by this state ?
*330 It seems to me that the only answer to this question is, that it should be taxed upon the same proportion of the value of the bridge as it was'required under the charter to be taxed upon its capital stock paid in.
At the time of granting the charter, stock actually paid, in represented in the eye of the law, for the purposes of taxation, the property of the corporation. And when the property itself, instead of its representative, was made the basis of taxation, it should, in so far as the -property is in its nature indivisible, be apportioned for taxation between the states in the same ratio as was contemplated by the charter.
Assuming, then, as is contended on behalf of the plaintiff in error, that it is entitled to be taxed upon the same basis as corporations created under the present constitution, still it nowhere appears from the record, as is shown in the principal opinion, that the taxes charged against it are in excess of what it ought to pay.
The judgment should, therefore, be affirmed.